COMMONWEALTH *v.* HENRY E. JACKSON.

[Surcharge Larceny.]

AND now, March 12, 1843, the RECORDER said:

The circumstances, under which this case presents itself before me, are such, that in most instances would preclude a re-investigation of the facts, since they have been heard before an alderman of the city, and by him decided. In the present instance, to a rule of conduct, an exception has been made, and a hearing granted.

The case, itself, is involved in uncertainty. It is remarkable for the want of any thing that should characterize a legitimate business, the effect of which is to produce a doubt as to its integrity. This may be undeservedly, the misfortune of the parties, but it is nevertheless so.

From all the testimony given on the hearings, the following are the facts, on which the charge of larceny is asked to be sustained against the prisoner:

Henry E. Jackson and A. M. Nicholds, meet in the county of Luzerne, in this state, sometime since; they there became acquainted with one Isaac Roraback, who said he was the sole patentee of the "London and American improved water proving (for cloth, clothes and leather,) right," and by a paper dated Wilkesbarre, October 28, 1842, made the said Jackson and Nichodls his agents to sell the said right and patent, as follows:

The said parties made some verbal agreement, and set out on a tour for making sales. No written agree-

ments were made between them; and among those made by parol, was this: "That, on all sales of this right, one-third was to go to their principal, and two-thirds to themselves, and they should be jointly responsible for their expenses."

Various bargains were made by these parties, separately, from time to time; and barter and trade were resorted to, in their several dealings, in attempting and effecting the sales made. Horses and vehicles, and old debts, and other articles, beside money, were the considerations for which these parties parted with what they called their property, in this water-proof concern.

Arriving in Philadelphia, they continued their business. Nicholds proposed, at one time, that a Mr. M'Farland should be united in what they called the "company" concerns, but Mr. Jackson refused. After Jackson had property to the amount of about one thousand dollars, the result of the said sales, &c., Nicholds proceeds to West Chester, on the business of selling. While he was absent, Jackson makes various arrangements; takes M'Farland into partnership; makes a sale; divides the money, the result of their sale, with M'Farland; gives to one Day, a young man who was their travelling companion and sub-agent, assistant or clerk, seven dollars for Mr. Nicholds; leaves the bill due to Mr. Watson, for their board, unpaid, and leaves Philadelphia, taking all or nearly all the company property.

On Nicholds' return, he finds Day here, Jackson gone, and the affairs as already described. He then states to those who know of their business arrangements, that all relations between him and Jackson, have ceased; that Jackson would not return, and that if he did, he,

6*

Nicholds, would never "go with him again," and that he would set up on his "own hook." Between the time of Jackson's leaving, and Nicholds' return to Philadelphia, this Day had been sent to Burlington county, New Jersey, to sell the right for that county, by Jackson. He, as Jackson's agent, made the sale, for which he got a horse and a promissory note, which note he subsequently sold to the maker for a gun. While absent he found a purchaser for this right in the state of Ohio.

On Nicholds' return, he, Day, stated to him that he had an offer, for the right in the state of Ohio. Nicholds sent him, as his agent, to make the sale, but the purchaser, not content with the terms, on seeing Nicholds, he preferred the state of Virginia, and Nicholds sold him the right for this state, in payment for which, promissory notes to the amount of $900 were given, payable one year after date. The deed was executed in the name of "A. M. Nicholds, agent." At this time Day expected, as he says, some interest in the result of the sale, and afterwards sold the expectant interest for fifteen dollars, but three dollars of which he has received.

About this time Jackson comes back; he is taken ill, and remains so for many days. Nicholds attends him as a nurse; and Jackson, when convalescent, hearing of the results of the sale of the right to Virginia, takes a suitable opportunity, while his nurse sleeps, to abstract notes for $500 (being part of the $900), from the pocket-book of Nicholds, and, admitting the taking, still retains them, on the ground, that a partnership existed between them. The notes were the result of a sale, a partnership, &c., and the taking was not stealing.

This is a brief summary of the facts in the case, and the grounds of the defence.

In order to arrive at a proper conclusion in this case, it must be inquired:

1. Was, or was there not, a partnership?

2. If yes—was it dissolved?

3. Was the sale of the right for the state of Virginia, made by Nicholds, after the dissolution, on his own account?

4. Was the taking of the $500, part of the purchase money of said sale, a larceny?

Under the power of attorney, the rights of Nicholds and Jackson were joint and several. They, or either of them, were constituted agents, and all their acts show it was so understood by them. No partnership account was kept; no partnership name was used, but each sold in his own name. No division of profits was made, nor any pro rata share of losses, paid by either.

The union between M'Farland and Jackson; the sales by them (M'Farland having made a sale during the absence of Nicholds, and after he, M'Farland, was taken into the company, as it was called, on his own account, and not dividing any part of it); the equal division, by Jackson and M'Farland, of the amount of the sale made by them, shows that no partnership, as to third persons, was ever contemplated between the parties, Jackson and Nicholds, till the defence in this case was to be prepared. If a partnership was ever contemplated under the power of attorney, as a joint power only, then any act of the agents under the subsequent partnership, by a single partner, is void; and this is the strongest evidence of the non-existence of the partnership as such.

Both parties considered, and their counsel contend, for the letter, as giving a joint authority.

But suppose the parties acted under the belief a partnership existed? Did not the acts of Jackson, in taking in both M'Farland and Day as co-partners, during the absence, and without the consent of Nicholds, dissolve the pre-existing partnership? Should this not be sufficient to substantiate the dissolution? Then did not the notice given by Nicholds to both Day and M'Farland, and Watson, of a withdrawal, on his part, dissolve the partnership? 3 Kent 28, tit. Partners; Chitty on Contracts 208; 3 Ves. 74.

The doctrine of factors and joint tenancy—Livermore on Agency 213, and Cheap et al. Assignees of Branden &c., 4 Barnewell & Alderson 663—does not apply, as I hold the letter of attorney was several, as well as joint, and that the liability of the agents was several, and not joint, to their principal. No partnership being contemplated by the letter of attorney, each agent thus constituted, has an individual responsibility.

In regard to the sale of this patent right, for the state of Virginia, the deed is the best evidence, not only of the nature of the sale, but the relations between Nicholds and his principal. It is signed, " A. M. Nicholds, agent;" agent of Roraback, under the power of attorney, several, as regards both Jackson and Nicholds, and the purchase money was the property of Nicholds and his principal. Meyer *v.* Sharpe, E. T. 1815, C. P. 5 Taunt. 14, 13, Petersdorff's Abridgment, tit. Partners, it is held that "a mere agent paid out of the profits of an adventure, is not thereby a partner in the goods;" see also Dixon *v.* Cooper, M. T. 1768, K. B. 3 Wils. 40.

If then no partnership existed between one agent and his principal, it could not exist, as a consequence, between these two agents. In a word, then, there was no actual or constructive partnership between Nicholds and Jackson, under the letter of attorney. The subsequent acts of both, preclude the idea that they so considered it, quo ad the powers granted by the said letter of attorney. They considered themselves severally liable to their principal, and severally authorized to sell.

I am of opinion that no partnership existed, in law, between Nicholds and Jackson, as the agents of Roraback. The fact of their travelling together, and being jointly liable for their expenses, is a fact, taken with the admission of Nicholds, on this hearing, that there was a partnership; creates a partnership, as between Nicholds and Jackson, but not as to third parties. Nicholds says the agreement was, that one-third of the profits should go to their principal, and two-thirds to be divided between themselves. A partnership existed then between the parties.

I am of opinion that the subsequent acts of Jackson, in taking M'Farland into the concern; the sales by them, in the absence of, and without the consent of Nicholds, was a legal dissolution. But it is not made to appear that it was Jackson's intention or desire to dissolve, by these acts; and however they, in a legal point of view, be construed, I do not think it would be just to place him in a position which, in this case, such construction would do. The above conduct of both parties shows that they never contemplated their acts were to be governed by the technical rules of law; none

of which, not even its ordinary forms, they sought, to regulate their association in their business operations. The acts of Nicholds do not effect such a dissolution, as to forbid the idea that he was at some time to be responsible to Jackson, under the partnership agreement, as to the profits, as between themselves, and consequently, the existence of an undecided, unsettled interest of Jackson in his, Nicholds' property, in the event of a balance being due to Jackson on such settlement. The subsequent events that took place at Watson's, as to the payment of their bill, &c., strengthens me in the belief as to the propriety of this course.

As no partnership was created by the letter of attorney between Nicholds and Jackson, neither do any of the acts of the parties, as such agents, in regard to their business operation under it, establish a copartnership as to their principal, or third parties. The agreement made between them to divide the profits resulting in the sales, and the consequent agreement implied to share the losses, creates a partnership as between themselves; and if a legal dissolution did take place, I am of opinion such dissolution did not debar either of a claim of property in the goods of the other, till a final settlement of their accounts was made. So much for the partnership and its dissolution. The next point, as to the sales of the Virginia right, being made after the time of the so called dissolution, is admitted, and that it was made by Nicholds in his own right.

The last and important point now to be decided is, was the taking a larceny?

Larceny in Pennsylvania, is the felonious taking and carrying away the personal goods of another, with the

intent to convert them to the taker's use; or the wrongful or fraudulent taking and carrying away the personal goods of another, with the felonious intent to convert them to his, the taker's use, without the consent of the owner. 2 East, C. L. C. 18; Smith Laws, vol. 7, p. 704. Properly to decide this question, let us examine:

1. What property was taken.

2. And was the taking felonious, &c.

The notes taken, were the result of a sale of the right to Virginia, made by Nicholds in his own name, as agent, which he has a right to do under the power; he, Nicholds, regarding the partnership dissolved; consequently the property was in Nicholds, subject however, to any right or interest of Jackson, which had or might have accrued, under the partnership as between them, notwithstanding an actual or bona fide dissolution, which may or may not have been brought home to the knowledge of Jackson.

But suppose the knowledge of the dissolution had been given to Jackson, no settlement of the pre-existing partnership had been made, and Jackson might have considered that he had an interest in this property, or a part of it. He took only a part of the property; there being $900 in notes, in all, and the taking was but of $500. If then, the taking was based on a belief that he, Jackson, had any interest or property in the notes taken, it is not a larceny.

The law is immutably fixed on this point by elementary writers, and by the decisions of the courts. In 2 Starkie 444, it is held, "that it is a good defence to a charge of larceny, to show the taking was bona fide, under process of law, *or* under a supposed claim of

right, however unfounded such claim may be." The "animo furandi" being the primary ingredient in larceny, 2 Russell cap. ix. b. iv. p. 100, it is held that if there be any *fair pretence* of property, or right, in the prisoner, or if it be brought unto doubt at all, the court will direct an acquittal. See also, 2 East P. C. ch. 16, p. 659; 2 Russell, p. 155.

If, therefore, Jackson believed, however unfounded it may have been, that he had a right of property in the goods taken, and, if such belief in the prisoner, be supported by a probable cause, derived from the facts and circumstances of the case, I cannot bind over. But the belief, or opinion, or claim, or right to the property taken, must be supported or sustained by other testimony, than that of the prisoner; it must be shown by proof aliunde, or else larceny would rarely be a criminal charge, and the civil courts would be called on to decide groundless claims of property, and the criminal laws would be thus violated with impunity. If, in this case, there was a question of fact, I could not hesitate, as to my duty; a jury, alone, can decide on that; no court or magistrate is permitted, by our law, to usurp the co-ordinate powers of the jury, in deciding on questions of fact, merely.

But, it is different, as to a question of law; a question of technical constructions; and a magistrate, if he believes the charge is not made out according to law, would be justified in discharging it, on that ground.

This case has been ably argued by Mr. Risler, the counsel for the prosecution; and with ability and research by Mr. Titus and Mr. Vandyke, counsel for the prisoner. The facts being admitted, or, at least, those

of importance, the law of the case has been examined carefully, and my opinion is that the circumstances and facts of the case do not establish probable cause that the prisoner, animus furandi, took and carried away the property of A. M. Nicholds. The proper remedy for Mr. Nicholds, is a civil suit. His rights and his property can be obtained by such a course. To seek punishment for Jackson, at the hands of the commonwealth, neither protects the rights, or restores the property, of Nicholds. His counsel should obtain for him redress in the civil courts; the criminal law cannot afford it.

*Henry E. Jackson is discharged.*

Counsel for commonwealth, *Risler ; Titus & Vandyke* for defendant.